UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BURT ARTHUR JORDAN,                )
                                   )
                Plaintiff          )
                                   )
v.                                 )        1:21-cv-00034-NT
                                   )
EASTERN MAINE MEDICAL              )
CENTER, et al.,                    )
                                   )
                Defendants         )

## RECOMMENDED DECISION ON DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT AND ORDER ON MOTION TO AMEND

Plaintiff, a citizen of Florida who formerly had privileges to practice dentistry at
Defendant Eastern Maine Medical Center, d/b/a Northern Light Eastern Maine Medical
Center, (EMMC), asserts various claims against the hospital and Defendant James Clarke,
M.D., related to the suspension and ultimate termination of Plaintiff's privileges.

The matter is before the Court on Plaintiff's motion for leave to amend the
complaint, (ECF No. 13), and Defendants' motion for summary judgment.  (Motion, ECF
No. 15.)   Following a review of the record, and after consideration of the parties'
arguments, I deny Plaintiff's motion to amend and recommend the Court grant Defendants'
motion for summary judgment.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a).  "After the moving party has presented evidence in support

of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, there exists a trial-worthy controversy and summary judgment must be denied as to the supported claims. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

### SUMMARY JUDGMENT FACTS[1]

Plaintiff is a pediatric dentist who joined the medical staff of EMMC in June 2013 and primarily specialized in surgical pediatric dentistry work. (DSMF ¶¶ 1–2).[2] In May

---

[1] Local Rule 56 requires that as part of the summary judgment practice, the parties file statements of material facts "as to which the moving party contends there is no genuine issue of material fact." D. Me. Loc. R. 56(b). A party who opposes a motion for summary judgment must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by [Local Rule 56]." D. Me. Loc. R. 56(c) Plaintiff's submissions do not comply with Local Rule 56. As a consequence, the facts are derived primarily from Defendants' statement of material facts. Although the Court has no duty to do so, to the extent that Plaintiff's submissions have referenced the record such that I was able to locate the record evidence to which Plaintiff refers, I considered the evidence.

[2] "DSMF" will refer to Defendants' Statement of Material Facts.

2016, one of EMMC's pediatric dentists spoke with Defendant Clarke, then Chief of Surgery at EMMC, about concerns regarding the quality of Plaintiff's patient care. (*Id.* ¶ 3). Defendant Clarke reported the concerns to EMMC's Chief Medical Officer, who recommended a peer review to discuss Plaintiff's cases in greater detail. (*Id.* ¶¶ 5, 9).

Defendant Clarke informed Plaintiff that a peer review process would be conducted on June 9, 2016, and that the results of the peer review would be shared with him if he was unable to attend the peer-review meeting. (*Id.* ¶ 6). Through counsel, Plaintiff attempted to reschedule the peer review meeting, but given the schedules of the participating physicians, Defendant Clarke proceeded on June 9 in Plaintiff's absence with a follow-up session on June 21, 2016. (*Id.* ¶¶ 7–8). The peer review, which included a discussion of four cases in detail, generated significant concerns about the quality of Plaintiff's patient care. (*Id.* ¶ 9.) Defendant Clarke informed Plaintiff that the peer review raised questions about the quality of Plaintiff's patient care and that an external peer review would be conducted. (*Id.* ¶ 10).

The external peer review was conducted by Maine Medical Association External Peer Review Program and included a review of Plaintiff's treatment of fifteen patients. (*Id.* ¶ 11.) The reviewers identified several areas of concern about Plaintiff's patient care. (*Id.* ¶¶ 11-12). The Professional Competence Committee of EMMC's Medical Executive Committee reviewed the report of the external peer review and determined that Plaintiff's privileges would be suspended pending further consideration by the Medical Executive Committee. (*Id.* ¶ 13). On October 11, 2016, Plaintiff was notified of the external peer review report and of the summary suspension. (*Id.* ¶ 14.) The Medical Executive

Committee also requested an investigation into Plaintiff's qualifications and privileges. (*Id*. ¶ 15.)  The President of EMMC's Medical Staff convened an Ad Hoc Investigation Committee (the Committee) to conduct an investigation.  (*Id*. ¶ 16.)

The Committee reviewed the conclusions of the peer review process, interviewed Plaintiff, and voted unanimously to continue the summary suspension of Plaintiff's privileges.  (*Id*. ¶¶ 17–19).  Concluding that a review of Plaintiff's cases revealed "issues of significant clinical concern" that were "rampant throughout all of the cases reviewed," the Committee subsequently recommended that Plaintiff's medical staff privileges be revoked.  (*Id*. ¶ 20).  The Medical Executive Committee reviewed the report and voted to recommend to EMMC's Board of Trustees the revocation of Plaintiff's medical staff privileges.  (*Id*. ¶ 22.)  Plaintiff was informed of the Medical Executive Committee's decision and of his right to a hearing on the decision.  (*Id*. ¶ 23.)  Plaintiff did not request a hearing.  (*Id*. ¶ 24.) The Board of Trustees subsequently voted to revoke Plaintiff's privileges.  (*Id*. ¶ 25.)

On the day the Medical Executive Committee voted to continue the summary suspension of Plaintiff's privileges, EMMC reported the decision to the National Practitioner Databank and the Maine Board of Dental Practice.  (*Id*. ¶ 28.)  EMMC later supplemented its report to the National Practitioner Databank to reflect the termination of Plaintiff's privileges.  (*Id*. ¶ 29.)

**DISCUSSION**

**A.     Motion for Summary Judgment**

Plaintiff asserts three causes of action: (1) abuse of the peer review process, (2) violation of the Whistleblower Protection Act, and (3) defamation.[2]

**1.     Abuse of the Peer Review Process**

The Due Process Clause of the Fourteenth Amendment "can be violated only by conduct that may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Because Defendants are private entities and are not performing government functions, there is no state action here. *See e.g.*, *Tirado-Menendez v. Hosp. Interamericano de Medicina*, 476 F. Supp. 2d 79, 83 (D.P.R. 2007) (applying state action requirement to private hospital defendant). Given the lack of state action, the Due Process Clause cannot serve as the basis for Plaintiff's objections to Defendants' peer review procedures.

---

[2] When the rule of decision for a claim is provided by state substantive law rather than federal law, such as in diversity cases, a federal court applies the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Maine generally applies the "most significant contacts and relationship" approach outlined in the Second Restatement. *Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶ 16, 822 A.2d 1159, 1165. The parties did not raise the choice of law issue. Because Plaintiff's claims sound in tort and contract, in the absence of any arguments to the contrary, the weight of the contacts here appears to favor the application of Maine law. *See* Restatement (Second) of Conflict of Laws §§ 145 (1971) (the general principle for torts is to weigh the contacts, including the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered); Restatement (Second) § 149 ("In an action for defamation, the local law of the state where the publication occurs" generally governs); Restatement (Second) §§ 187, 188 (the law of the state chosen by the parties to govern their contractual rights generally governs, and if they did not choose, the court should weigh the contacts, including the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties).

Procedural protections can also arise under state law pursuant to contractual obligations, such as employment agreements and corporate by-laws. *See e.g.*, *Celli v. Friends of Fort Knox*, No. CV-05-274, 2005 WL 3957439, at *2 (Me. Super. Ct. Dec. 29, 2005) ("the terms of that contract are laid out in the corporate by-laws" and "establishes the legal basis and framework for a claim that the organization failed to comply with its by-laws"); *Margolin v. Morton F. Plant Hosp. Assoc., Inc.*, 348 So.2d 57,  (Fla. 2d DCA 1986) (recognizing a cause of action because the complaint "include[d] allegations that in the course of revoking the appellant's staff privileges the hospital substantially departed from the provisions of its own bylaws").

Here, the bylaws require notice and an opportunity to be interviewed by the investigation committee.  The uncontroverted record establishes that Plaintiff was informed that the committee had been formed to investigate whether there was a need for corrective action, was provided with a copy of the bylaws, was provided with medical records for the cases that were the subject of the internal and external peer reviews, was provided with other information that Plaintiff requested, and was interviewed by the committee.  (ECF Nos. 16–1, 16-2, 16-3, 16-4.)  Although Defendants chose not to reschedule a peer review meeting upon Plaintiff's request, Plaintiff points to no requirement that they reschedule for him to attend.  Plaintiff does not deny that he received notice of the adverse actions and opted not to request a hearing.  Plaintiff thus has not cited any evidence that would support a finding that Defendants denied Plaintiff any protections to which he was entitled under the hospital's bylaws or any other contract between the

parties.[3]  Accordingly, Plaintiff's claim of abuse of the peer review process is unsupported, and summary judgment in favor of Defendants on the claim is warranted.[4]

### 2.    Whistleblower Protection Act Claim

Plaintiff argues Defendants attempted to prevent him from exposing a widespread hospital practice that is potentially harmful to patients' health and safety in violation of the Maine Whistleblowers' Protection Act (WPA), 26 M.R.S. §§ 833(1)(A), 883(1)(D).  To prove a WPA retaliation claim, Plaintiff must establish that "(1) he engaged in statutorily protected activity; (2) his employer made an employment decision that adversely affected him; and (3) . . . there was a causal link between the protected activity and the adverse employment action."  *Doyle v. Dep't of Hum. Servs.*, 2003 ME 61, ¶ 20, 824 A.2d 48.  To recover compensatory damages, punitive damages, or attorney's fees through a civil action for a violation of Maine Whistleblower Protection Act, a claimant must first file a charge or claim with the Maine Human Rights Commission within 300 days of the alleged violation. 5 M.R.S. §§ 4611, 4622.  Any subsequent civil action must be filed (1) within

---

[3] Plaintiff's reliance on *Marshall v. Spectrum Med. Group*, 198 F.R.D. 1 (D. Me. 2000), is unavailing.  In that case, the plaintiff sought, in discovery, to obtain his credentialing file and to elicit testimony concerning the use of peer review process against him. EMMC claimed the requested information was privileged under 24 M.R.S.A. § 2510-A, commonly known as the Maine Health Security Act; 32 M.R.S.A. § 3296, commonly known as the Board of Medicine's authorizing statute; and 42 U.S.C. §§ 11131-11133, commonly known as the Health Care Quality Improvement Act (HCQIA).  *Id.* at *1–3.  The Court found no privilege and overruled EMMC's objection to the document and witness subpoena upon the peer-review doctor.  *Id.* at *5.  The issue in *Marshall*, therefore, was whether a party to a civil action could obtain certain information in support of his claim that the defendant abused the peer review process.  The Court's analysis in *Marshall* cannot reasonably be construed to suggest that the record in this case would support a finding that Defendants abused the peer review process.

[4] Defendants are also entitled to summary judgment on the peer review process claim because Plaintiff has not presented evidence to rebut the presumption that the professional review action satisfied the four elements of the immunity from damages afforded by the HCQIA. *See* 42 U.S.C. §§ 11111(a); 11112(a).

two years of the alleged violation or (2) within ninety days of the Commission's action regarding the charge, whichever is later.  5 M.R.S. § 4613(2)(C).

Plaintiff does not assert, and the record does not otherwise reflect, that he filed a claim with the Maine Human Rights Commission.  Because Plaintiff did not file a claim with the Commission within 300 days of the alleged violation, Plaintiff's cannot obtain the relief he requests in this Court.  Even if Plaintiff could obtain relief beyond legal damages, the statute of limitations bars his claim.  Plaintiff asserts he notified Defendant Clarke of the allegedly dangerous practice in May or June 2016, and all the adverse actions against Plaintiff occurred in 2016 and early 2017.[5]  The statute of limitations expired, therefore, in early 2019, approximately two years before Plaintiff filed his complaint with the Court in January 2021.

The record also lacks a basis to toll the limitations period or to compute the limitations period differently.  Plaintiff references fraudulent concealment, equitable estoppel, and continuous wrongs, which principles can sometimes support exceptions to the strict application of a statute of limitations.  *See e.g., Bangor Water Dist. v. Malcolm Pirnie Engineers*, 534 A.2d 1326, 1329 (Me. 1988) (discussing a basis to overcome the statute of limitations for a defendant's fraudulent intent and concealment of facts which, if plaintiff had known, would have been aware that the facts had given rise to a cause of action); *Townsend v. Appel*, 446 A.2d 1132, 1134 (Me. 1982) (in the context of statutes of

---

[5] Defendants assert the last adverse action they took against Plaintiff was the final report to the National Practitioner Databank and the Maine Dental Board on February 16, 2017.  The record lacks any reliable evidence to the contrary.

limitations, equitable estoppel applies if a plaintiff "relies to his detriment on the conduct of the defendant, by failing to seek legal redress while the doors to the courthouse remain open to him"); *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996) (a continuous wrong theory is one that relies on a "continuing or repeated injury"); *Lincoln Rental Sys. v. Lincoln Sanitary Dist.*, No. CV-04-203, 2006 WL 950405, at *1 (Me. Super. Mar. 29, 2006) (noting that in some cases "[a]n ongoing series of violations causes the limitations period to begin anew" but "[a] continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects" of a past decision). Plaintiff, however, has provided no evidence to support the application of any of the principles in this case. Summary judgment in favor of Defendants on Plaintiff's whistleblower retaliation claim, therefore, is appropriate.

### 3.     Defamation Claim

Plaintiff argues that Defendants provided false reports to the National Practitioner Databank and the Maine Board of Dental Practice. Defamation consists of four elements: (1) "a false and defamatory statement concerning another", (2) "an unprivileged publication to a third party," (3) "fault amounting to at least . . . negligence on the part of the publisher," and (4) "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447.

Maine law also provides a statute of limitations for defamation claims: "Actions for slander and libel must be commenced within 2 years after the cause of action accrues." 14 M.R.S.A. § 753. The alleged defamatory reports were made in early 2017, and the

summary judgment record establishes that Plaintiff had notice of the statements at that time.  The two-year limitations period expired, therefore, in early 2019, approximately two years before Plaintiff filed his complaint in this Court.  Plaintiff's claim for defamation, therefore, is barred by the statute of limitations.

## B.     Motion for Leave to File Amended Complaint

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a plaintiff to amend the complaint "once as a matter of course" within 21 days after service of the complaint. Thereafter, leave of court is required, though leave should be granted "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").  To the extent a court determines a proposed claim would be futile because the alleged facts fail to state an actionable claim, the court can deny the motion to amend to assert the proposed claim.  *Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009).

Plaintiff requests leave to amend his complaint to add claims for whistleblower retaliation, "Equitable Estoppel/Fraudulent Concealment," and "Continuous wrongs." Because I construed the original complaint to include a whistleblower retaliation claim, such an amendment would be superfluous.

In addition, as discussed above, *see supra* part A-2, the principles of equitable estoppel, fraudulent concealment, and continuous wrongs would be relevant to the statute of limitations analysis. They do not constitute independent causes of action. Because I considered the principles when analyzing the applicable statutes of limitations and because the record does not support the application of the principles in this case, summary judgment in favor of Defendants would be warranted even if the complaint were amended to add Plaintiff's proposed assertions. Accordingly, the proposed amendment would be futile.

CONCLUSION

Based on the foregoing analysis, I deny Plaintiff's motion for leave to amend the complaint, and I recommend the Court grant Defendants' motion for summary judgment.

**<u>NOTICE</u>**

In accordance with Federal Rule of Civil Procedure 72, any objection to the order in the motion to amend the complaint shall be filed within fourteen (14) days after being served of the order.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

<u>/s/ John C. Nivison</u>
U.S. Magistrate Judge

Dated this 21st day of December, 2021.